IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**KEVIN DELANEY MOSS** **PLAINTIFF**

v.   **CIVIL ACTION NO. 3:16CV230-RP**

**COMMISSIONER OF SOCIAL SECURITY** **DEFENDANT**

### MEMORANDUM OPINION

Plaintiff Kevin Delaney Moss has applied for judicial review under 42 U.S.C. § 405(g) of the Commissioner of Social Security's decision denying his application for a period of disability and disability insurance benefits (DIB) under Title III of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Docket 1. Plaintiff filed an application for benefits on May 9, 2013, alleging disability beginning on March 31, 2012. Docket 7 at 177-78.

The agency administratively denied Plaintiff's claim initially on June 11, 2013, and on reconsideration on September 3, 2013. *Id*. at 93-99; 101-108. Plaintiff then requested an administrative hearing, which the Administrative Law Judge (ALJ) held on April 16, 2015. *Id*. at 126-27; 141-46. The ALJ issued an unfavorable decision on June 29, 2015. *Id*. at 48-57. On September 28, 2016, the Appeals Council denied Plaintiff's request for review. *Id*. at 1-4. Plaintiff timely filed this appeal from the September 28, 2016 decision, the undersigned held a hearing on June 8, 2017, and it is now ripe for review.

Because both parties have consented to a magistrate judge conducting all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment. Docket 10.

## I.  FACTS

Plaintiff was born on January 13, 1973 and has been a younger individual since the alleged onset date of March 31, 2012. *Id*. at 193. Plaintiff has a high school education and past relevant work as a service writer or automobile repair service estimator, automobile mechanic, automobile accessory installer, delivery driver, car salesman, and fire watcher. *Id*. at 67, 84-86. Plaintiff testified that he has been unable to return to work since March 31, 2012, and contends that he became disabled as a result of problems with his diabetes as well as a broken right leg. *Id*. at 71.

At the ALJ hearing, Plaintiff testified that he was diagnosed with type I juvenile diabetes at the age of twelve and has been on insulin ever since. *Id*. He stated that he has problems controlling his blood sugar and experiences low levels, ranging between 20 and 30, approximately three to four times a week. *Id*. at 72. He monitors his blood sugar six or seven times a day and requires insulin at least three times a day. *Id*. at 73. Plaintiff testified that he experiences nerve pain in his feet, predominately his right foot, that is aggravated by standing. *Id*.

Plaintiff stated that he suffered injuries to his right leg on two separate occasions that "shattered from [his] knee to [his] ankle" and "broke from [his] kneed to [his] hip and fractured [his] other hip and [his] vertebrae." *Id*. at 74-75. Regarding the injury to his right leg, Plaintiff testified that on a daily basis he experiences constant pain from his hip to his ankle. *Id*. at 76. Between two and three times a week the pain is so severe that he cannot get out of bed, however, Plaintiff does not take any prescription pain medication. *Id*. Plaintiff stated that he uses a cane to prevent him from falling and estimated that he can sit thirty to forty-five minutes at a time, stand ten to fifteen minutes, and lift and carry five to ten pounds. *Id*. at 78-79. Plaintiff testified that he

cannot bend his right leg and cannot bend forward from a standing position to pick something off the floor. *Id*. at 76, 79.

Regarding Plaintiff's everyday activities, he testified that he can take care of his personal needs but has difficulty dressing his lower body. *Id*. at 77. He stated that he is able to do some household chores but cannot sweep or mop. *Id*. Plaintiff spends the majority of his day at his parents' house, mostly sitting in a recliner. *Id*. at 78. When grocery shopping, Plaintiff testified that he is not able to walk much and requires the use of a chair. *Id*.

The ALJ established that Plaintiff had not engaged in substantial gainful activity since March 31, 2012, the alleged onset date. *Id*. at 50. Next, the ALJ found that Plaintiff experienced the severe impairments of insulin dependent diabetes mellitus, L4-5 transvers process fracture, T6-10 compression fracture, and history of right femur and tibiofibular fracture requiring multiple surgeries, but that Plaintiff's impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925, and 416.926). *Id*. at 52-53.

Considering all of Plaintiff's severe impairments, the ALJ found that Plaintiff's demonstrated abilities were consistent with a Residual Functional Capacity (RFC) to perform sedentary work with the following additional limitations: lift/carry ten pounds occasionally and less than ten pounds frequently; sit six hours in an eight-hour workday; stand/walk two hours in an eight-hour work day; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance and stoop; and never crouch, kneel, or crawl. *Id*. at 53. In addition to these limitations, Plaintiff requires the option to change positions between sitting and standing every thirty minutes. *Id*.

In formulating Plaintiff's RFC, the ALJ afforded little weight to the state agency medical consultants who determined that Plaintiff's diabetes mellitus and lower limb fractures are not severe. *Id*. at 55. Instead, the ALJ found that "the objective medical evidence establishes that [Plaintiff's] impairments cause significant limitations in functioning." *Id*. The ALJ afforded significant weight to state agency psychological consultant Dr. Vicki Prosser, finding her opinion that Plaintiff's mental impairment does not cause more than a minimal limitation in his ability to perform basic mental work activities to be consistent with the record as a whole. *Id*

Based on the ALJ's review of the medical evidence and in conjunction with Plaintiff's testimony, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." The ALJ determined that "the objective medical findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations" and that "the objective evidence indicates [the] ability to perform more actives than related." *Id*. at 54.Ultimately, the ALJ found Plaintiff's allegations regarding his impairments to be "partially credible" yet concluded that Plaintiff's "diabetes has been maintained without complications and that the injuries to his leg have healed with some residual effects that are not completely disabling." *Id*. at 55.

The ALJ determined that Plaintiff is unable to perform any past relevant work, and his ability to perform the full range of sedentary work is impeded by additional limitations. *Id*. at 56. The ALJ questioned the vocational expert (VE) as to whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity, to which the VE testified that Plaintiff could perform the requirements of a charge account clerk, a food and beverage order clerk, and a bench hand assembler. *Id*. The ALJ

ultimately ruled that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 31, 2012 through June 29, 2015, the date of the ALJ's decision. *Id*. at 57.

Plaintiff claims the ALJ failed to properly consider all of the evidence and that the ALJ's RFC finding with the additional sit/stand limitation supports a finding of disability. Docket 12 at 3.

## II. EVALUATION PROCESS

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, the plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude that plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If the plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering the plaintiff's residual functional capacity, age,

---

[1] *See* 20 C.F.R. §§ 404.1520 (2012).
[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).
[3] 20 C.F.R. §§ 404.1520(b) (2012).
[4] 20 C.F.R. §§ 404.1520(c) (2012).
[5] 20 C.F.R. §§ 404.1520(d) (2012). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2011).
[6] 20 C.F.R. §§ 404.1520(e) (2012).

education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which the plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[8]

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision to deny benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). A court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10]

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the

---

[7] 20 C.F.R §§ 404.1520(g)(2010).
[8] *Muse*, 925 F.2d at 789.
[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).
[10] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson,* 402 U.S. at 390.

## IV. DISCUSSION

Plaintiff argues that the Commissioner's decision should be reversed on two separate grounds. Docket 12 at 3. First, Plaintiff claims that the ALJ failed to properly consider all of the evidence of record when determining Plaintiff's disability status. Plaintiff argues that the ALJ seemed to "pick and choose" evidence least favorable to Plaintiff relating to his hip and the injuries to his lower extremity. *Id*. at 6. Plaintiff points to a February 10, 2015 x-ray finding "moderate degenerative changes noted of the hips, left greater than right with interval progression from prior exam" and "traumatic arthritis" associated with his "left acetabular fracture." *Id*. at 7; *see also* Docket 7 at 642. According to Plaintiff, the ALJ's failure to mention these findings and their impact on Plaintiff "significantly prejudiced" Plaintiff and resulted in an RFC that fails to consider "the totality of his impairments." Docket 12 at 8.

The Commissioner responds that the ALJ considered Plaintiff's testimony specifically regarding the pain he experiences "from his hip to his ankle" in his right leg (Docket 7 at 54), but "ultimately found Plaintiff's claims of disabling pain to be unsupported by the evidence." Docket 13 at 6. In support of the ALJ's RFC finding, the Commissioner asserts that the ALJ considered the objective medical evidence, Plaintiff's subjective statements, and the medical opinions of State agency physicians and "did not selectively read the record or impermissibly pick and choose only the evidence that supported [his] decision." *Id*. at 10.

Plaintiff's medical records consistently document normal healing and proper alignment of his injuries resulting from his March 31, 2012, and December 2012 accidents. On April 1, 2012,

Plaintiff underwent an open reduction internal fixation of his right tibia fracture. Docket 7 at 302-03. Follow up x-rays found "excellent alignment" and "advanced healing." *Id*. at 359, 369; *see also* 372, 374, 389, 405-06, 410, 469. On physical examination, Plaintiff exhibited "excellent" range of motion of the right ankle and right knee. *Id*. at 408. The records indicate that as early as September 2012, Plaintiff used a cane "off and on" but could "walk without anything." *Id*. at 403.

In December 2012, Plaintiff was involved in another accident resulting in rib fractures, an L4 and L5 left transverse process fracture, mild T6 and T10 compression deformities, distal femur fracture of his right leg, and left acetabular fracture. *Id*. at 457-58, 463-64, 467-68, 478. At the time of his injury, Plaintiff reported pelvic/hip pain but an x-ray revealed "no fracture, dislocation, or pathologic destruction" and no significant arthritic changes in the hips or sacroiliac joints. *Id*. at 470. Plaintiff underwent an open reduction and internal fixation of the right femur and right tibia and fibula fractures, and his left acetabular facture and spinal fractures were treated conservatively. *Id*. at 479.

In January 2013, Plaintiff's records demonstrate that he was "doing well" with no pain in his right leg. *Id*. at 578. Treatment records from Regional Medical Center from September 2013 document Plaintiff's complaints of pain in his pelvis, right femur, and right knee, however, on September 19, 2013, Plaintiff's right femur x-ray report states "normal hip articulation." *Id.* at 596, 602-03, 607, 628.

On November 19, 2013, at an outpatient visit at the Family Health Clinic of Grenada, the review of systems states "negative for arthralgias, back pain, and myalgias" and the musculoskeletal examination notes "normal gait." *Id*. at 587-88; *see also* 589-92 (same findings

for 11/21/13, 11/29/13). On December 17, 2013, Plaintiff complained of leg pain, but his musculoskeletal exam again revealed normal gait. *Id*. 593-94.

OPC Orthopedics records from August 12, 2014, reflect neuropathy and leg pain of five on a ten point scale. *Id.* at 633. The assessment provided states Plaintiff "likely would have difficulty with prolonged ambulation and heavy lifting, no restrictions to sedentary work." *Id*. 634. X-ray studies of Plaintiff's right knee, femur, and pelvis show "stable alignment" and "no fresh fractures or hardware failure." *Id*. at 635. Plaintiff continued to complain of pain in his right lower extremity, however, as noted in the ALJ's opinion, physical examination showed normal gait, normal pulses, and no swelling. *Id*. at 638. This leg pain was determined to be "neuropathic in nature" with an "arthritic component." *Id*.

At a follow-up visit on February 10, 2015, Plaintiff complained of hip, knee, and back pain but reported that he had not fallen in the past year. *Id*. at 644, 645. Plaintiff's pelvic x-ray showed "moderate degenerative changes noted of the hips, left greater than right with interval progression from prior exam […] left acetabular fracture not well seen suggesting healing with associated traumatic arthritis." *Id*. at 642. However, the associated assessment/plan contains no specific findings regarding Plaintiff's hip, and Plaintiff was referred to physical therapy in order to improve the range of motion in his knee and for gait training. *Id*. at 646.

The responsibility to determine the plaintiff's residual functional capacity belongs to the ALJ, and in making his determination he must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite his physical and mental limitations. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). However, the ALJ may not

establish physical limitations or the lack thereof without medical proof to support such a conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). "The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C 405(g), unless they are reached by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d at 35.

      The Court finds that the ALJ's RFC finding was supported by substantial evidence as there is no indication that the ALJ did not consider all the medical evidence in the record when making a disability determination in this case. The ALJ cites the February 10, 2015 x-ray report in his decision as evidencing Plaintiff's neuropathic and arthritic pain and again references the report in support of a sedentary RFC with a sit/stand option. Docket 7 at 51, 54 (citing Exhibits 12F-14F). This RFC accounts for Plaintiff's continued complaints of pain in his right lower extremity, including his hip, despite the ALJ's determination that Plaintiff's allegations are only "partially credible" due to objective medical evidence showing "normal gait, normal pulses, and no swelling." *Id*. at 51, 55. Moreover, considering this evidence, the ALJ afforded little weight to the State agency medical consultants who found Plaintiff's impairments nonsevere. *Id*. at 55.

      The Court finds that the ALJ properly considered Plaintiff's subjective complaints as well as the February 10, 2015 x-ray report in concluding that "the injuries to [Plaintiff's] leg have healed with some residual effects that are not completely disabling." *Id*. at 55. The Court finds that the ALJ did not fail to mention these findings and their impact on the Plaintiff, but rather, the ALJ considered all of the record evidence in formulating Plaintiff's RFC and his decision is supported by substantial evidence.

Plaintiff further asserts that the ALJ's assignment of a sedentary RFC with the option to change positions between sitting and standing every thirty minutes "does not fit within the definition of sedentary work" thus warranting a finding of disability. Docket 12 at 9-10. At step five of the evaluation process, the Commissioner bears the burden of establishing that there is gainful employment the claimant is capable of performing considering his RFC, age, education, and past work experience. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The ALJ held that Plaintiff was capable of gainful employment because, despite his existing impairments, he could perform certain unskilled sedentary jobs identified by the vocational expert (VE) including occupations such as charge account clerk, food and beverage order clerk, and bench hand assembler. Docket 7 at 56.

Plaintiff argues that "having to alternate between sitting and standing does not fit within the definition of sedentary work" and thus "Plaintiff should have been found disabled where he was reduced to a sedentary RFC with the added restrictions of a sit/stand option." Docket 12 at 8. The Commissioner counters that the sit/stand option does not render a claimant *per se* disabled but rather "requires that an ALJ consult a vocational expert to determine the extent to which the [sit/stand] limitations erode the [sedentary] occupational base." Docket 14 at 11. The Court agrees.

Social Security Regulation 93-12 specifies that "[i]n cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base." The Fifth Circuit held in *Lawler v. Heckler* that vocational testimony is required where a claimant's limitations exceed those defined by the medical-vocational guidelines for a particular kind of work. *Lawler*, 761 F.2d 195, 197-98 (5th Cir. 1985). *Lawler* explains that according to the Dictionary of Occupational Titles, sedentary work implies a

capacity to sit for at least 6 hours in an 8-hour work day." *Id*. at 197. Where a claimant experiences additional limitations to his ability to perform the full range of sedentary work, expert vocational testimony regarding the available jobs in the national economy is required. *Id*.

Here, the ALJ specifically questioned the VE at the hearing as to whether jobs existed for an individual who required the opportunity to "change positions from sitting to standing every 30 minutes" to which the VE responded affirmatively. Docket 7 at 87. The Court finds that the ALJ properly relied on the VE's testimony in finding Plaintiff not disabled.

## V.  CONCLUSION

The Court finds that the ALJ considered all record evidence in formulating Plaintiff's RFC and further finds that the ALJ properly relied on VE testimony to find Plaintiff not disabled at step five of the evaluation process. Because the ALJ's decision was supported by substantial evidence, the Court affirms the decision of the Commissioner.

A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED,** this the 25th day of July, 2017.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE